IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| SUSAN HALL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-06-606 |
| | § | |
| CARNIVAL CORPORATION D/B/A | § | |
| CARNIVAL CRUISE LINES, and | § | |
| M/V ECSTACY, | § | |
| | § | |
| Defendants. | § | |

<u>ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND GRANTING
DEFENDANTS' MOTION TO TRANSFER VENUE</u>

Plaintiff Susan Hall ("Plaintiff") brings this action against Defendant Carnival Corporation D/B/A Carnival Cruise Lines and Defendant M/V ECSTACY (collectively "Carnival") for personal injuries allegedly suffered by Plaintiff while she was a passenger on the M/V ECSTACY. Carnival filed a Motion to Dismiss Under Fed. R. Civ. P. 12(b)(3), or, in the Alternative, Motion to Transfer Venue Under 28 U.S.C. §§ 1404(a), 1406(a). Plaintiff timely filed a Response thereto, and Carnival file a Reply. For the reasons outlined below, the Court respectfully **DENIES** Carnival's Motion to Dismiss and **GRANTS** Carnival's Motion to Transfer Venue to the Southern District of Florida, Miami Division.[1]

**I. Background**

On July 21, 2006, Plaintiff contacted Carnival's reservation office, which is located in Miami,

---

[1]The Court does not consider this Order worthy of publication. Accordingly, it has not requested and does not authorize publication.

1

Florida, and booked a five-day cruise aboard the M/V ECSTASY.  Plaintiff received her ticket, which contained a forum selection clause, in July.   On August 21, 2006, Plaintiff boarded the M/V ECSTASY in Galveston, Texas to begin her cruise.  Plaintiff alleges that on or about August 24, 2006, she fell on an unreasonably dangerous surface.  Plaintiff claims that she fell because Carnival was negligent and the M/V ECSTASY was unseaworthy.  As a result of the alleged fall, Plaintiff claims she sustained severe and permanent injuries to her neck, head, back, and mouth.

Plaintiff brings this action in the Southern District of Texas, Galveston Division, because Plaintiff and several witnesses reside in Texas, and the M/V ECSTASY's home port is Galveston, Texas.[2]  Carnival's principal place of business is in Miami, Florida.  Carnival contends that Plaintiff was required to bring any claims she has against it in the Southern District of Florida, Miami Division, pursuant to the forum selection clause contained in her passenger ticket.  Consequently, Carnival moves to dismiss this action, or, in the alternative, to transfer the action to the Southern District of Florida, Miami Division.

## II.  Legal Analysis

### A.  Motion to Dismiss

This Court has repeatedly held that when venue is otherwise proper in the court in which the plaintiff filed, and the valid forum-selection clause specifies a different federal court as the appropriate venue, § 1404(a) is the proper means to analyze the motion.  *See, e.g.*, *Williams v. M/V JUBILEE*, 431 F. Supp. 2d 677, 679 (S.D. Tex. 2003); *Elliott v. Carnival Cruise Lines*, 231 F. Supp. 2d 555, 558–59 (S.D. Tex 2002).  Section 1404(a) allows for transfer, not dismissal; consequently,

---

[2]Defendant disputes that Galveston is the M/V ECSTASY's home port.  The M/V ECSTACY is a foreign flagged vessel, which is currently sailing from the port in Galveston, Texas.

Carnival's Motion to Dismiss Under Fed. R. Civ. P. 12(b)(3) is hereby respectfully **DENIED**.  *See* 28 U.S.C. § 1404(a); *see also Seabulk Offshore, Ltd. v. Dyn Marine Servs., Inc.*, 201 F. Supp. 2d 751, 754 (S.D. Tex. 2002).

### B.  Motion to Transfer Venue

#### 1.  Legal Standard

The federal venue transfer statute provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a) (2000).  The movant bears the burden of demonstrating to the Court that it should transfer the case.  *See Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989) (requiring the movant to make a showing that the forum sought is more convenient); *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966) ("At the very least, the plaintiff's privilege of choosing venue places the burden on the defendant to demonstrate why the forum should be changed.").  In determining whether a venue transfer is warranted, the Court considers the availability and convenience of witnesses and parties; the cost of obtaining attendance of witnesses and other trial expenses; the place of the alleged wrong; the location of pertinent books and records; the possibility of delay and prejudice if transfer is granted; and the plaintiff's choice of forum, which is generally entitled to great deference.  *See, e.g., Dupre v. Spanier Marine Corp.*, 810 F. Supp. 823, 825 (S.D. Tex. 1993); *Continental Airlines, Inc. v. American Airlines, Inc.*, 805 F. Supp. 1392, 1395–96 (S.D. Tex. 1992).  But when a valid forum-selection clause purports to govern venue, the Court must address the convenience of the designated forum given the Parties' expressed preference for that venue.  *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S. Ct. 2239, 2244, 101 L. Ed. 2d 22 (1988); *Seabulk*, 201 F. Supp. 2d at 755.  The decision to transfer a case lies

3

within the sound discretion of the Court, and such determinations are reviewed under an abuse of discretion standard. *See Peteet*, 868 F.2d at 1436.

2. *Validity of the Forum Selection Clause*

Plaintiff does not dispute that the forum-selection clause at issue is identical to the clause analyzed by the United States Supreme Court in *Carnival Cruise Lines v. Shute*, 499 U.S. 585, 111 S. Ct. 1522, 113 L. Ed. 2d 622 (1991). In *Carnival*, the Supreme Court found that the forum selection clause was fundamentally fair and thus enforceable. *Carnival*, 499 U.S. at 593–95, 111 S. Ct. at 1527–28. Plaintiff contends that the circumstances surrounding the instant case differ from *Carnival* and its progeny sufficiently to warrant holding the clause unenforceable in this action.

First, Plaintiff claims that this case, unlike *Carnival*, contains an *in rem* claim against the vessel. Plaintiff alleges that it could not have brought an *in rem* action in Florida because the vessel is located in Galveston, Texas and is not expected to be located in Florida at any time during the pendency of this lawsuit. In an admiralty *in rem* action, the Complaint must "state that the property is within the district or will be within the district while the action is pending." Fed. Supp. Adm. R. C(2)(c). Plaintiff claims that, therefore, the Southern District of Florida does not offer a "court of competent jurisdiction," as is required under 46 U.S.C. § 183.[3]

Plaintiff's argument is clever, inventive, and intriguing, but it does not prohibit this Court from transferring the matter to the Southern District of Florida. In *Continental Grain Co. v. The Barge FBL-585*, 364 U.S. 19, 80 S. Ct. 1470, 4 L. Ed. 2d 1540 (1960), the Supreme Court faced a similar argument. Continental Grain Company brought suit against Barge FBL-585 *in rem* and the

---

[3]Section 183 nullifies any contract or agreement that lessons, weakens, or avoids "the right of any claimant to a trial in a court of competent jurisdiction." 46 U.S.C. § 183.

4

barge owner *in personam* in the United States District Court in New Orleans, Louisiana.  Prior to the New Orleans suit, the barge owner had brought an action for damages in a Tennessee court, which was removed to the United States District Court in Memphis.  The barge owner filed a Motion to Transfer Venue, requesting that the entire New Orleans action be transferred to Memphis for the "convenience of the parties and witnesses and in the interest of justice." 28 U.S.C. § 1404(a); *see Continental Grain*, 364 U.S. at 20–21, 80 S. Ct. at 1472.  The Louisiana District Court determined that it would be more convenient for the majority of the witnesses for the claims to be tried in the same court and transferred the action. *Continental Grain*, 364 U.S. at 21, 80 S. Ct. at 1472.  Continental Grain Company appealed the district court's decision because the *res* was not located in Memphis.  The Fifth Circuit affirmed. *Id.*  The Supreme Court likewise affirmed: "The case . . . if tried in New Orleans, will bring about exactly the kind of mischievous consequences against 'the interest of justice' that § 1404(a) was designed to prevent."*Id.*  The Court followed the "common-sense approach . . . in interpreting § 1404(a),"and determined that both the *in rem* and the *in personam* actions should be treated as "inseparable parts of one single 'civil action'" in the venue analysis. *Id.* at 24–27, 80 S. Ct. at 1474–75.  Thus, in the instant case, even though the *in rem* action alone could not have been brought in the Southern District of Florida because the M/V ECSTASY was not within that district, as long as the Southern District of Florida has *in personam* jurisdiction over Carnival, transferring the entire case to the Southern District of Florida does not deny Plaintiff trial by a "court of competent jurisdiction."  Nevertheless, the Court is complimented by Plaintiff's spirited effort to h ave her claim heard here, and this effort is excellent zealous advocacy on counsel's part.

The remainder of Plaintiff's contentions regarding the alleged differences between this case

5

and *Carnival* and its progeny are developed in its arguments pertaining to the general venue transfer factors, so the Court, keeping in mind the venue preference expressed in the forum selection clause, now turns to those factors. *See Seabulk Offshore*, 201 F. Supp. 2d 751, 755 (S.D. Tex. 2002) (noting that a forum selection clause creates a presumption that the parties would be better served by a transfer and stating that the Court gives credence to that presumption in its analysis of the other § 1404 factors).

  *3. The Availability and Convenience of Witnesses*

  Both Plaintiff and Carnival contend that key witnesses in this matter are beyond the subpoena power of the forum to which they are opposed.  Plaintiff, her daughter, four other fact witnesses, Plaintiff's medical expert, and Plaintiff's economic damages expert are all from Texas and beyond the subpoena power of the Florida courts.  Carnival offers competing key witnesses that are beyond the subpoena power of this Court, including the medical staff of the M/V ECSTASY.  Carnival claims that the ECSTASY's medical staff are independent contractors and that it cannot compel them to testify.  The other witnesses that Carnival suggests are beyond this Court's subpoena power are Carnival's employees, and "the Court finds that these witnesses' convenience is entitled to little consideration because they are [Carnival's] employees." *Walter Oil & Gas Corp. v. Teekay Shipping*, 270 F. Supp. 2d 855, 861 (S.D. Tex. 2003).

  Carnival argues that the Court should not consider the convenience of Plaintiff's fact witnesses because they were passengers on the same cruise and presumably agreed to the same forum-selection clause as Plaintiff.  Therefore, Carnival contends that they are presumed to have agreed that Florida is the most convenient forum for litigation regarding the cruise.  Of course, these witnesses agreed to go to Florida if they sued Carnival, not to help out another passenger.  So, Plaintiff rightly

may have some difficulty getting her key witnesses to Florida.  Normally this factor would weigh heavily toward retention of this case.  However, looking through the *Carnival* lens, its bears mentioning that Plaintiff agreed to the forum even though there was a chance that, should an accident occur, the other passengers would not be subject to Florida's subpoena power. *See Carnival*, 499 U.S. at 593–94, 111, S. Ct. at 1527 (noting the benefits forum selection clauses have to both cruise lines and passengers).  Thus, this factor weighs in favor of retention, but not strongly in favor of retention.

### 4.  Location of Books and Records

The location of books and records is generally of little importance in personal injury cases. Carnival claims that all relevant documents are located at its principal place of business in Florida. Plaintiff contends that the records should be easily ascertainable through normal discovery procedures.  Carnival has not indicated that the books and records in this case are so voluminous as to cause Carnival to incur substantial cost in transporting them to this Court.  *See LeBouef v. Gulf Operators, Inc.*, 20 F. Supp. 2d 1057, 1060 (S.D. Tex. 1998) ("The Court finds little inconvenience inherent in bringing, if necessary, those records to Galveston [from Florida].").  Therefore, this factor does not weigh for or against transfer.

### 5.  Cost of Obtaining the Attendance of Witnesses and Other Trial Expenses

Parties to litigation face unavoidable costs in almost every case that goes to trial.  *Robertson v. M/V Cape Hunter*, 979 F. Supp. 1105, 1108 (S.D. Tex. 1997).  Furthermore, it is "rare that the forum in which the case is litigated is the most convenient for all the parties involved." *Id.*  Plaintiff claims that transferring the case to Florida will significantly increase the costs of this case.  Plaintiff is unable to work or drive due to her injuries, and Plaintiff claims it is unjust to require her to incur the costs of transporting herself and, likely, her witnesses to Florida simply "because Defendant does

7

not want to litigate in the same port where it makes tens of millions of dollars and where the ship in question *resides*." (Pl.'s Resp. at 9.)

The Court is sympathetic to the economic burden Plaintiff will bear if the case is transferred, but where, as here, Plaintiff accepted a contract specifying litigation in Florida, the cost-shifting argument does not carry much weight. *See Elliott*, 231 F. Supp. 2d at 561–62.

### 6. *Location of the Alleged Wrong*

Plaintiff alleges that the incident that led to her injuries occurred between the ports of Texas and Mexico and that Carnival's crew failed to treat Plaintiff for the duration of the voyage, including the time the M/V ECSTASY was present in the Port of Galveston. Plaintiff also points out that there is a strong local interest in ensuring that the M/V ECSTASY conducts her business in a reasonably safe manner because the M/V ECSTASY regularly sails from the Port of Galveston and the residents of this District are "much more likely to sail on the vessel than are residents of Florida." (Pl.'s Resp. at 9.) Again, while Plaintiff's arguments are valid, the Court holds by its previous statement that such factors "cannot overcome the presumption created by the forum-selection clause, especially in light of the Supreme Court's justification for forum-selection clauses in form passage contracts." *Elliott*, 231 F. Supp. 2d at 562.

### 7. *Potential for Delay*

Any transfer will produce some delay, and Plaintiff must show that a transfer at this stage would cause a significant or unusual delay in order for this factor to be relevant. *See In Re: Horseshoe Entertainment*, 337 F.3d 429 (5th Cir. 2002) ("[I]n rare and special circumstances a factor of delay or prejudice might be relevant in deciding the propriety of transfer, but only if such circumstances are established by clear and convincing evidence."). Plaintiff did not address whether

8

a transfer to the Southern District of Florida would cause substantial delay.  Thus, this factor does not

affect the presumption created by the forum selection clause that Florida is a more convenient forum.

In sum, the Court finds that Plaintiff has not presented evidence sufficient to override the

presumption created by the forum-selection clause that a trial would be more convenient in Florida.

Carnival has satisfied its burden of demonstrating to this Court that transfer is warranted to serve the

interests of justice and for the convenience of all involved.

### III.  Conclusion

For the reasons stated above, Carnival's Motion to Dismiss is **DENIED**.  Carnival's Motion

to Transfer Venue to the Southern District of Florida, Miami Division, is **GRANTED**.  This case is

hereby **TRANSFERRED** to the Southern District of Florida, Miami Division, pursuant to 28 U.S.C.

§ 1404.  Any unresolved issues are respectfully deferred to the considered judgment of the transferee

court.[4]  Each Party is to bear its own taxable costs and expenses incurred herein to date.

**IT IS SO ORDERED**.

**DONE** this 8th day of December, 2006, at Galveston, Texas.

_____
Samuel B. Kent
United States District Judge

---

[4]The Court notes respectfully that the unseaworthiness claim has no vitality because
Plaintiff was not a member of the crew.  Still, the Court defers to the transferee court in its final
resolution.

9